# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| JOHN D. ROQUEMORE,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>Defendant. | CASE NO. 08cv0068-IEG-AJB<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (Doc. No. 15) and**<br><br>**(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT. (Doc. No. 16.)** |
|---|---|

Plaintiff John D. Roquemore, proceeding by and through counsel, has filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying his application for Social Security Disability Benefits under Title II of the Social Security Act. Plaintiff moves the Court for summary judgment reversing the Commissioner's decision and ordering an award of benefits. (Doc. No. 15.) The Commissioner has filed a cross-motion for summary judgment, asking the Court to affirm the denial of benefits. (Doc. No. 16.) These motions are appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). Upon review, for the reasons explained below, Plaintiff's motion for summary judgment is DENIED and the Commissioner's cross-motion is GRANTED.

//
//

**BACKGROUND**

<u>Procedural History</u>

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act on April 14, 2005. (Administrative Record Transcript ("Tr.") at 14.) Plaintiff alleged he became disabled on January 7, 2005, due to degenerative arthritis. (Tr. at 15.) The Social Security Administration had previously denied plaintiff's applications for Disability Insurance Benefits in 1990, 1992, 1995, and 2004. (Tr. at 317.) The Social Security Administration denied plaintiff's 2005 application initially and upon reconsideration. At plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing on April 6, 2006. (Tr. at 308-22.) On May 25, 2006, ALJ Bernard A. Trembly issued an unfavorable written decision finding plaintiff was not disabled. (Tr. at 11.)

Plaintiff requested review by the Appeals Council of the ALJ's decision. The Appeals Council denied Plaintiff's request for review on November 7, 2007. (Tr. at 4-6.) Plaintiff filed a complaint for judicial review on January 14, 2008. (Doc. No. 1.)

<u>Factual Background</u>

Plaintiff is a 52-year-old man with a high school education and past relevant work as a laborer and janitor. (Tr. at 20.) Plaintiff testified he hurt his back while serving in the military. (Tr. at 19.) He alleges a disability due to degenerative arthritis in his back. Plaintiff has not engaged in any gainful activity since January 7, 2005, the alleged onset date of his disability.

Plaintiff's treating physician is Dr. Poornima Khanna. (Tr. at 18.) Dr. Khanna concluded plaintiff was disabled due to back strain on March 14, 2005, with an estimated return of July 13, 2005. He recommended physical therapy. (Tr. at 258.) Dr. Khanna cited back pain as the reason for plaintiff's continued disability on September 30, 2005, but opined plaintiff would be ready to return to work January 1, 2006. (Tr. at 255.)

On August 9, 2005, plaintiff attended physical therapy at Paradise Valley Hospital. The record shows a series of back stretches the therapist instructed plaintiff to perform at home. (Tr. at 231.) The physical therapist performed an evaluation citing major functional limitations but indicated plaintiff had "good" potential with rehabilitation. (Tr. at 234.) Plaintiff could not bend forward. (Tr. at 235.) The therapist discharged plaintiff on June 24, 2006, after he missed four

1  sessions out of ten in a two month period.  (Tr. at 281.)

2  On December 14, 2005, Dr. John S. Gillick, a Veteran's Administration physician, performed an evaluation.  Dr. Gillick noted in his interview that plaintiff was laid off January 7, 2005, but had been struggling with back problems and had been receiving social security benefits since late January of 2005.  (Tr. at 248.)  Dr. Gillick examined plaintiff and found he was limited in forward flexion to 80 degrees and fatigued quickly when doing a forward bending exercise. With respect to shoulder pain, Dr. Gillick found plaintiff had significant tenderness and pain along with some muscle disfunction that could be the cause of the numbness in his right index finger. (Tr. at 248-52.)  In his analysis, Dr. Gillick opined plaintiff was limited to performing light or sedentary work.  (Tr. at 252.)

On December 29, 2005, Dr. Willaim Synder reviewed plaintiff's Magnetic Resonance Imaging and found mild levoscoliosis and mild to moderate narrowing of the lower lumbar spine related to degenerate changes.  Dr. Snyder also noted a cyst in the right lobe of the liver, for which he suggested further evaluation.  (Tr. at 241).

On June 6, 2005, Dr. Thomas J. Sabourin performed an orthopedic consultation for the Social Security Administration.  Dr. Sabourin noted plaintiff received "conservative" treatment from his private doctor in the past.  (Tr. at 195.)  Plaintiff claimed to use a cane all the time.  (Tr. at 195.)  Dr. Sabourin found plaintiff appeared comfortable and exhibited normal gait and posture. (Tr. at 196.)  Plaintiff experienced pain with forward flexion, extension, and lateral flexion through the lumbar spine upon examination and was tender to the touch, but there was no spasm, swelling, or warmth.  Plaintiff experienced tenderness in the right shoulder through the range of motion but there was no warmth, swelling, or instability.  (Tr. at 197.)  Dr. Sabourin diagnosed plaintiff with lumbar spondylosis and mild right shoulder bursitis and found he had numbness at the tip of the right index finger and thoracic spondylosis.  (Tr. at 198.)  Dr. Sabourin issued a Medical Source Statement which indicated plaintiff could do the following: (1) carry twenty pounds occasionally and ten pounds frequently, (2) stand and walk up to six hours in an eight hour work day and sit for six in an eight hour work day, and (3) climb, stoop, kneel, or crouch occasionally.  Plaintiff is unable to walk on uneven terrain.  (Tr. at 199.)

On June 16, 2005, Dr. Karolyn Mauro reviewed the evidence on the behalf of the Social Security Administration in plaintiff's Personal Capacity Statement and opined that while the symptoms were attributable to a medically determinable impairment, the "severity or duration of the symptom(s)" was "disproportionate" to expected outcomes of the diagnosed conditions. (Tr. at 206.)

On February 28, 2006, Nurse Amy Hecht suggested plaintiff try pool exercises. (Tr. at 262.) In September of 2005, she suggested plaintiff try daily exercise such as swimming, walking, or biking. (Tr. at 273.) In November of 2005, Nurse Hecht suggested plaintiff try to lower his blood pressure by doing a daily aerobic workout. (Tr. at 269.)

## DISCUSSION

Standard of Review

To qualify for disability benefits under the Social Security Act ("the Act"), an applicant must show that: (1) he or she suffers from a medically determinable impairment that can be expected to result in death or has lasted, or can be expected to last, for a continuous period of twelve months or more; and (2) the impairment renders the applicant incapable of performing the work that the applicant previously performed and incapable of performing any other substantially gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). An applicant must meet both requirements to be "disabled." Id.

The Social Security Regulations employ a five-step process to determine whether an applicant is physically disabled under the Act. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed to subsequent steps. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). Although the ALJ must assist the applicant in developing the record, the applicant bears the burden of proof as to the first four steps. Id. If the fifth step is reached, the burden shifts to the Commissioner to rebut the finding of disability. Id. The five steps are as follows:

(1)  Is the claimant presently working in any substantially gainful activity?

(2)  Is the claimant's impairment severe?

(3)  Does the impairment meet or equal one of a list of specific impairments?

  (4)  Is the claimant able to do any work that she has done in the past?

  (5)  Is the claimant able to do any other work that exists in significant numbers in the national economy?

20 C.F.R.§ 416.920; see also Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (describing the five step sequential evaluation process).

  Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final decision of the Commissioner. 42 U.S.C. § 405(g). This Court has jurisdiction to review the Commissioner's benefits decision and "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a hearing." 42 U.S.C. § 405(g).

  The Commissioner's denial of disability benefits will only be disturbed if the ALJ's findings are based on legal error or are not supported by substantial evidence. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). In determining whether there exists substantial evidence to support the ALJ's finding, the Court must weigh both the evidence that supports and the evidence that detracts from the ALJ's conclusion as that evidence exists in the record. Id. "Where the evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision." Mayes, 276 F.3d at 459 (citation omitted).

The ALJ's Decision

  Here, the ALJ utilized the five-step eligibility test to analyze plaintiff's claim. With regard to step one, the ALJ noted plaintiff has not engaged in substantial gainful employment since his alleged disability onset date of January 7, 2005. (Tr. at 15.) At step two, the ALJ found Plaintiff's spondylosis and right shoulder bursitis are severe medically determinable impairments. (Tr. at 16.) At step three, the ALJ found plaintiff's impairments did not individually or in combination equal any of the criteria contained in the Listing of Impairments, Appendix 1, Subpart P, Regulations Number 4. The state physicians opined that plaintiff's impairments do not meet the conditions. Plaintiff has not presented any physician's opinion that plaintiff's impairments do

meet the conditions. (Tr. at 16.) At step four, the ALJ found plaintiff's retained residual functional capacity does not allow him to perform his past relevant employment. (Tr. at 20.) Finally, at step five, the ALJ concluded there are a significant number of jobs available in the national economy for the claimant to participate in. (Tr. at 20.)

The ALJ's specific relevant findings were:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since his January 7, 2005 alleged onset of disability.

3. The following are considered "severe" impairments: spondylosis of the thoracic and lumbar spine, and right shoulder bursitis (20 CFR §§ 404.1520(c)).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 & 16.

5. The undersigned finds the allegations of the claimant's disabling pain, symptoms, and limitations, when considered pursuant to the law of the Ninth Circuit Court of Appeals, Social Security Rulings 96-3p and 96-7p, and pertinent regulations, are not totally credible for the reasons stated in the rationale portion of this decision.

6. The claimant retains the following residual functioning capacity: lift/carry 20 pounds occasionally, 10 pounds frequently; sit for a total of six hours during an eight hour work day; stand/walk for a total of six hours during an eight hour work day; and occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is an individual closely approaching advanced age (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a high school education (20 CFR §§ 404.1564 and 416.964).

10. Transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant's nonexertional limitations do not significantly erode the occupational base for unskilled light work (Social Security Ruling 83-14).

12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.

|   |   |   |
|---|---|---|
| | 13. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)). |

(Tr. at 21-22.)

Plaintiff's Allegations of Error

1.   The ALJ's Partial Rejection of Plaintiff's Credibility

First, plaintiff argues the ALJ did not have sufficient reasons to discredit plaintiff's allegations of disabling pain. The ALJ based his decision on three reasons:

> First, the medical evidence of record shows that treatment of claimant's severe impairments has been conservative in nature, as it has consisted of medication and physical therapy. Second, the claimant has been encouraged by health practitioners, including a physical therapist, to get more exercise, including swimming, biking and walking. This does not support the allegation that the claimant's impairments are so disabling as to preclude all work. Third, if the claimant's daily activities and abilities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence.

(Tr. at 19.) Plaintiff argues the ALJ did not sufficiently identify which portions of plaintiff's testimony were not credible. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). But the ALJ specifically rejected plaintiff's allegation that plaintiff did not have the residual capacity supported by the medical evidence because of his disabling pain. Plaintiff correctly argues the ALJ may reject testimony in the absence of affirmative evidence of malingering "only if he makes specific findings stating clear and convincing reasons for doing so." Id. All of the medical evidence supported the ALJ's assessment of residual functional capacity. This is a clear and convincing reason to reject plaintiff's claim that he had no capacity to perform any work activity. The doctors' prescriptions of "minimal" and "conservative" treatment are also an appropriate basis to discredit subjective pain complaints. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). Finally, although the ALJ did not specifically identify which "other reasons" were likely the cause of limitations on plaintiff's daily activities (Tr. at 19), the ALJ noted elsewhere that plaintiff skipped the majority of his physical training sessions. (Tr. at 17.) Plaintiff's failure to follow the recommended treatment also casts doubt on his allegations of disabling pain. Smolen, 80 F.3d at 1284 (holding ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). The Court

therefore finds the ALJ's reasons for discrediting plaintiff's allegations to be clear and convincing.

### 2. Failure to Consider Side Effects of Medication

Plaintiff also argues the ALJ erred in failing to consider the side effects of plaintiff's medication. The ALJ noted plaintiff claimed he felt sleepy due to his medication and took one or two naps each day. (Tr. at 17.) The only evidence in the Record that plaintiff felt sleepy when taking his medication was plaintiff's subjective report. (Tr. at 106, 109, 132, 177.) The ALJ did not err in failing to take plaintiff's subjective report into consideration where there was no medical support for his claim. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

### 3. Lack of Substantial Evidence

Plaintiff also argues the ALJ's determination of plaintiff's residual functional capacity was not based on substantial evidence. The ALJ credited the consistent findings of plaintiff's Veteran's Administration doctors and the Social Security Administration's doctors. Plaintiff argues the ALJ failed to consider Dr. Gillick's opinion that the degeneration of plaintiff's right upper extremity affected his residual functional capacity. But Dr. Gillick opined that plaintiff could perform light labor or sedentary work, which supported the ALJ's assessment of plaintiff's residual functional capacity. (Tr. at 252.) Accordingly, the ALJ's determination was supported by substantial evidence.

### 4. Reliance on the Medical Vocational Guidelines

Plaintiff also argues the ALJ should not have relied on the Medical Vocational Guidelines ("grids") to determine plaintiff's capacity to perform work. Under Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007), "the grids are inapplicable when a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." Id. at 1075. As discussed above, the ALJ properly rejected plaintiff's unsupported contention of nonexertional limitations based on pain and medication side effects. Plaintiff's postural limitations did not significantly limit the range of work available to plaintiff because plaintiff can occasionally bend and stoop (Tr at 20) and he is thus able "[t]o perform substantially all of the exertional requirements of most sedentary and light jobs." Social Security

Ruling 83-14; see also Social Security Ruling 85-15 ("If a person can stoop occasionally . . . the sedentary and light occupational base is virtually intact"). Accordingly, the ALJ's use of the grids to determine the availability of work in the national economy was appropriate. Thompson v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment. The decision of the Commissioner is AFFIRMED, terminating this case.

**IT IS SO ORDERED.**

**DATED:  September 14, 2008**

*(signature)*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**